**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| J.I.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | **Civil Action No. 25-04188 (SRC)**<br><br>**OPINION** |

**CHESLER, District Judge**

This matter comes before the Court on appeal by Plaintiff J.I. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act ("Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 78.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's application for benefits, alleging disability beginning September 30, 2022. A hearing was held before Administrative Law Judge Trina Moore (the "ALJ") on May 2, 2024, and the ALJ issued an unfavorable decision on May 16, 2024. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of May 16, 2024, the ALJ found that, at step two, Plaintiff had the following severe impairments: depression; anxiety; bipolar disorder; morbid obesity; status post pituitary gland surgery; and headaches. At step three, the ALJ found that Plaintiff's condition did not meet the requirements of any of the Listings of Impairments. At step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with several additional nonexertional limitations. At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded because the ALJ formed the RFC based solely on her own lay opinion and it is therefore not supported by substantial evidence.

In reviewing the ALJ's determination, this Court must affirm the Commissioner's final decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Further, on appeal, Plaintiff carries twin burdens of proof. First, Plaintiff bears the burden at the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Second, Plaintiff bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). At the first four steps, this requires that Plaintiff show that, but for the error, he might have proven his disability. In other words, when appealing

a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful.

For a district court to be able to find that an ALJ's opinion is supported by substantial evidence, that ALJ must explain her reasoning such that her determination is amenable to meaningful review. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). While the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis," she must provide "sufficient . . . explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

In deciding Plaintiff's physical RFC, the ALJ here found that Plaintiff could perform a full range of work at all exertional levels with the following non-exertional limitations:

> never climbing ladders, ropes, or scaffolds; never crawling; avoiding all exposure to hazards such as unprotected heights and moving mechanical parts . . . .

(Tr. at 29). A full range of work at all exertional levels means that a claimant can do even "heavy work" which is work that "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 404.1567. As the Court reads it, nothing in the physical RFC appears connected to Plaintiff's reported frequent headaches.

In articulating the physical component of the RFC, the ALJ first described medical records, including notes from Plaintiff's various visits to doctors, particularly neurologists, from 2021 through 2024. Then, the ALJ provided the following single paragraph explaining how those records led her to the above-quoted RFC:

> Based on the foregoing, the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are not

> supported by the record. Although she testified that she experiences headaches daily, the bi-annual MRIs of her brain and visits with Dr. Huang do not reflect treatments or medications consistent with such a severity or frequency of headaches along with intact neurologic functioning at visits throughout the period at issue. Further, there is nothing in the medical record to suggest that the claimant is unable to either stand or sit for extended periods of time. Her physical examinations repeatedly showed normal flexion and extension in the spine, and normal range of motion and strength in the upper and lower extremities and normal gait. Further, the claimant's treatment for headaches has been relatively routine and conservative, consisting of prescriptions for Fioricet and Gabapentin. Although she received a referral to a neuro-ophthalmologist, there is no indication that the claimant has sought this treatment yet.

(Tr. at 34). This paragraph alone does not provide sufficient explanation to "permit meaningful review" of the ALJ's RFC formulation. Jones, 364 F.3d at 505. Instead, it is primarily a string of conclusory sentences which demonstrate the ALJ's near-exclusive reliance on her own lay opinion. For example, the ALJ apparently concluded that the physical RFC did not need to account for Plaintiff's headaches because "the bi-annual MRIs of her brain and visits with Dr. Huang do not reflect treatments or medications consistent with such a severity or frequency of headaches" and "claimant's treatment for headaches has been relatively routine and conservative." (Tr. at 34). But the Court is left wondering how the ALJ came to these conclusions.[1] What, specifically, about the treatments or medications that Plaintiff has taken, led to the ALJ's view that they are "routine and conservative" and not reflective of severe or frequent headaches? And next, why did an assessment of "conservative" treatment lead to the ALJ's apparent position that the

1 The Court also notes that normal MRI imaging of the brain does not necessarily bear on whether an individual is in fact experiencing frequent headaches or migraines, so it is especially unclear to the Court what the exact significance of these imaging results are on the RFC determination. See Do I Need an MRI for my Migraine?, Am. Migraine Found. (August 6, 2026), https://americanmigrainefoundation.org/resource-library/do-i-need-an-mri-for-my-migraine/ [https://perma.cc/Z9M7-93RG] ("For primary headache disorders like migraine, imaging is unable to identify the cause;" "It may be frustrating not to find out what's causing your headache from imaging results, but this should not be surprising since the diagnosis of migraine is in part based on having normal imaging tests.").

RFC need not account for Plaintiff's headaches at all? None of this is clear from the ALJ's brief explanation, and the Court will not speculate as to the ALJ's reasoning. See Zigarelli v. Comm'r, Soc. Sec., 2019 WL 3459080, at *4 n.3 (D.N.J. July 30, 2019) ("[I]t is not for this Court to speculate as to the ALJ's thought processes, and so the Court will not.").

In sum, the ALJ did not sufficiently develop the record or explain her findings "to permit meaningful review." Jones, 364 F.3d at 505. And where a court cannot meaningfully review an ALJ's decision, "remand is warranted." Hendry v. Comm'r of Soc. Sec., 2018 WL 4616111, at *15 (D.N.J. Sept. 26, 2018).

For the reasons set forth above, this Court finds that the Commissioner's decision is not amenable to meaningful review, pursuant to Burnett, and the decision of the Commissioner is vacated and remanded for further proceedings in accordance with this Opinion.

s/Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: August 7th, 2026